## H. M. PILCHER v. IMOGENE RYLEE.

Western Section. May 16, 1925.

Certiorari denied by Supreme Court March 13, 1926.

1. **Evidence. Evidence of domestic relations held not admissible.**
    In an action to recover on three promissory notes evidence with relation to domestic relations of complainant which did not affect credibility of witness, held not admissible.

2. **Evidence. Evidence of friendly relations between mother and daughter held properly excluded.**
    Evidence that relations between complainant and her daughter, wife of defendant, were friendly could have no material bearing on case and was properly excluded.

3. **Evidence. Husband and wife may testify for or against each other, except as to facts acquired by virtue of their relation as husband and wife.**
    Transactions and conversations had between the husband and wife with reference to their own affairs or business and not in the presence of some third person, fall within the prohibition of the statute. Shannon's Code, section 5596.

4. **Evidence. Wife's evidence should be admitted with caution.**
    Where a wife is called to testify against her husband, the evidence should be carefully scrutinized by the court and admitted with great caution.

5. **Trusts. Trustee may sue in his own name to recover trust property from stranger.**
    The trustees of an expressed trust have the legal title to and are the legal owners of personal property belonging to the trust estate.

6. **Bills and notes. Evidence of consideration held properly submitted to jury.**
    Where evidence is conflicting as to whether notes were issued for consideration the issues of fact submitted to the jury held without error.

Appeal from Chancery Court, Shelby County; Hon. I. H. Peres, Chancellor.

Affirmed.

Hughes & Hughes, of Memphis, for appellant.

S. A. Wilkinson, of Memphis, for appellee.

SENTER, J. The bill filed in this cause is to recover the principal and interest on three certain notes aggregating the sum of $6,285; one note for the sum of $5,000, one note for the sum of $1,000, and one note for the sum of $285. The bill alleges that the defendant H. M. Pilcher, executed and delivered to complainant his promissory note dated February 24, 1921, for the sum of $5,000, due one day after date, with interest at the rate of six per cent per annum, payable semi-annually; one note dated July 25, 1921, due January 1, 1922, for the sum of $1,000 with interest at the rate of

eight per cent per annum; one note dated March 2, 1922, due one year after date, for the sum of $285, with interest at the rate of six per cent per annum, and alleging that each of the notes also were past due and unpaid with interest thereon, and that demand for, payment had been made and payment refused.

The prayer of the bill sought a judgment on these three notes with interest. The defendant filed a plea in abatement, which plea in abatement was set down for argument on motion of complainant on the ground that it was insufficient.

Upon the hearing of argument on the plea in abatement the plea was overruled and disallowed by the court. The defendant then filed his answer to the bill, in which he denied that he executed and delivered to the complainant his promissory note for $5,000, and denied that he executed and delivered to the complainant his promissory note for $285 and denied that he was indebted to complainant in the sum of $6,285, or any other sum. He does not deny the signing of the respective notes sued on but denies liability on each of the three notes. As to the $5,000 note, the defendant states in his answer that the complainant could not recover; First, ''because said note was never signed nor delivered as contemplated by the parties and is not a binding obligation against the defendant.'' Second, ''because said $5,000 belonged to Will J. Rylee, a minor, and the complainant held same as trustee for said minor and that she cannot sue for recovery of said fund in her individual name, nor could she sue as trustee, that said minor is a necessary party plaintiff.'' Third, ''because said note was executed without any consideration passed between complainant and defendant and was wholly without consideration, and therefore void.''

As to the other two notes for $1,000 and $285, respectively, the defendant states in his answer as follows: ''Prior to the date of each of said notes, the wife of defendant aforesaid, had collected certain moneys belonging to the defendant and refused to pay over said money to defendant until this defendant would agree to execute note as evidence of the amount so held by her, and which she agreed to deliver to defendant only upon the execution of the aforesaid note. In order to thus get possession of money thus belonging to defendant he agreed to execute notes as demanded.''

The defendant avers in his answer that the complainant is not entitled to recover against him on said two notes. First, ''because complainant is not, in fact, the lawful owner and holder of said notes.'' Second, ''because there was no consideration passed between complainant and defendant when said notes were executed and said two notes were executed without consideration and are void.''

A jury to try the case was demanded by defendant. Issues of fact were made up and submitted to the jury as follows:

Issue No. 1: "Does the note for $5,000 represent a loan to defendant?" To this issue the jury answered "Yes."

Issue No. 2: "Did the defendant deliver the $5,000 note to his wife for delivery to complainant?" To this issue the jury answered "Yes."

Issue No. 3: "Was there any agreement between complainant and defendant that she, the complainant, would look to the house and lot alone as security for this note and that she would not look to the defendant personally for payment?" The jury answered this issue "No."

Issue No. 4: "Did the defendant receive of the complainant money or its equivalent, in an amount equal to the $1,000 note, and was it executed in consideration thereof?" The jury answered this issue "Yes."

Issue No. 5: "Did the defendant receive money of the complainant in an amount equal to the $285 note and was it executed in consideration therefor?" The jury answered this issue "Yes."

Issue No. 6: "Was Mrs. Pilcher acting as agent of complainant in receiving from the defendant the three notes?" The jury answered this issue "Yes."

Upon the determination of the issues of fact by the jury the Chancellor decreed a judgment in favor of complainant in the sum of $7,256.17 and the costs of the cause. The decree also recites "that the defendant moved the court to set aside certain findings of the jury and to grant him a new trial on said issues, which motion on due consideration thereof, was by the court overruled."

To the action of the court in overruling the motion to set aside the findings of the jury on the issues of fact, and from the decree of the Chancellor giving judgment against the defendant, the defendant excepted. A motion for a new trial was made by the defendant and overruled, to which action of the court in overruling the motion for a new trial the defendant excepted, and appealed to this court, and has assigned errors.

The first assignment of error goes to the action of the court in sustaining the objection of complainant to certain questions asked complainant by solicitor for defendant on cross-examination. This evidence was with reference to the domestic relations of complainant. While the assignment of error does not point out the exact error complained of, as required by the rules of this court, we have considered the questions and answers of the witness on this subject, and do not think the court was in error in sustaining the objection. It does not appear that there was anything in the evidence that could have operated to reflect upon the credibility of the witness. It could not have been competent for any other purpose. Nor do we think it was competent to sustain any averment in the answer of the defendant, or any contention made by the defendant.

The second assignment of error is as follows: "The trial court erred in excluding all testimony concerning the friendly and confidential relations of the complainant and her daughter, Mrs. Pilcher." We know of no rule that would make this evidence competent. Assuming that the relations between the complainant and Mrs. Pilcher, her daughter, were cordial and confidential, it could have no material bearing on any issues involved in the litigation. The relations between mother and daughter are generally pleasant, cordial and confidential, and this fact, if proven, would be immaterial. While it is true the answer of the defendant avers that the relations between the complainant and her daughter, Mrs. Pilcher, were confidential, it was an immaterial averment in the answer. We do not think there was error in the Chancellor excluding this evidence.

The action of the court in permitting Mrs. Pilcher, wife of the defendant, to testify as to certain matters is made the basis of the third assignment of error. This assignment of error, like the first two, does not point out the particular evidence complained of, except to refer to the motion for a new trial, and also pages 93, 94, and 99 of the record. The fourth ground for a motion for a new trial is as follows: "The trial court erred in permitting the witness, Mrs. Pilcher, to testify over the objection of the defendant, as follows: This check is the check that I cashed and delivered the cash money to Mr. Pilcher in the Union & Planters Bank on July 25, 1921, the date of that note."

The motion for a new trial did not complain of any other portion of the testimony of Mrs. Pilcher. However, at the trial of the case the following occurred while Mrs. Pilcher was being examined:

"Q.: Tell what you know about the transaction that resulted in that note, and surrounding its execution.

JUDGE WILKERSON: I want now to object to the wife of this defendant testifying to any matters and transactions occurring between her and her husband, on the ground that under the statute they are incompetent. I have the law to substantiate it.

THE COURT: What do you say?

MR. HUGHES: My purpose is to show that this witness was acting for her mother, and as agent of her mother."

After some argument on the subject the Chancellor stated: "I going to rule this way, all physical facts that the lady saw e, not arising out of any relation between husband and wife, or onsequence thereof, she may testify to, and all others that did out of the relation of husband and wife, or in relation thereto be excluded." The court then proceeds to state as follows:

"THE COURT: Each question, as it comes up, I will have to pass on, as it comes, because, I will have then to determine whether it is such an act . . . as arises out of the relation." The court then adds: "Now, all conversations for instance, between the two which would arise out of their relations as husband and wife will be excluded."

The witness was then permitted to testify to matters in accordance with the ruling of the court, and without any further objections. A careful examination of the testimony of Mrs. Pilcher shows that she was not permitted to testify to any matters that came within the statute on the subject.

"Husband and wife may testify for and against each other, except as to facts acquired by virtue of their relation as husband and wife." Orr v. Cox, 3 Lea, 617.

It is true that transactions and conversations had between the husband and wife with reference to their own affairs or business, and not in the presence of some third person, fall within the prohibition of the statute. Insurance Company v. Shoemaker, 11 Pickle, 82.

The statute is based upon the rule of public policy. Domestic affairs of husband and wife, and confidential transactions between husband and wife cannot be disclosed by either husband or wife as witnesses. If this were permitted it would in many instances result in domestic infelicity, and would be otherwise fraught with serious consequences to society. The wife or husband when offered as a witness for or against the other should not be permitted to testify to any matters, conversations, or transactions occurring between husband and wife and of a confidential nature growing out of the marriage relation. Where a wife is called to testify against her husband, the evidence should be carefully scrutinized by the court and admitted with great caution.

The evidence of Mrs. Pilcher, that was permitted to be heard by the jury, and to be considered, was kept within the proper limits under the rule, and under the statute, section 5596, Shannon's Code. We do not think the evidence complained of in the fourth ground the motion for a new trial, and above quoted, when taken in c nection with all her evidence that was permitted to be consider is violative of the statute.

An examination of the evidence of the defendant as to what curred with reference to the delivering of the notes to Mrs. Pilch and receiving from her the checks of the complainant does not c flict with the evidence of Mrs. Pilcher. Hence, if the particu evidence complained of by this assignment of error had been cluded it could not have affected the findings of the jury on th sues submitted. However, as above stated, we are of the opi

that the particular evidence complained of was competent, and the court was not in error in overruling the objection.

The fourth assignment of error presents the question that the complainant was not entitled in her own right and in her own name to maintain an action on the $5,000 note and the $1,000 note, because the $5,000 and the $1,000 constituted a trust fund in the hands of complainant for the use and benefit of her minor son. At the conclusion of all the evidence the defendant moved the court to withdraw from the consideration of the jury all the evidence on these two notes, and asked for a) decree dismissing the suit as to the $5,000 note. The court overruled this motion.

The undisputed evidence in the record is that the complainant had received from the grandfather of her minor son a $6,000 land note. It appears that this note was sent to her by the grandfather of her minor son on Christmas preceding the transactions between complainant and defendant involved in this suit. She states that she collected this $6,000 note, and that $5,000 of the proceeds was represented by the $5,000 note executed by defendant to complainant, and used as the $5,000 cash payment in the purchase of the house and lot; that afterwards she left this $1,000 balance in the bank to be invested by her daughter, Mrs. Pilcher, signing blank checks, so that Mrs. Pilcher could loan the $1,000 for her, and as her agent, and that subsequently Mrs. Pilcher did invest the $1,000 in certain acceptances and then later reinvested it by loaning it to the defendant, taking the defendant's note for $1,000 payable to complainant. The complainant testifies that the $6,000 note was sent to her by the grandfather of her minor son to be used for her minor son "as she saw fit." Later she states that the fund was to be used by her for the education and support of her minor son. The record does not disclose the exact nature of the trust, if, indeed this fund was in fact impressed, or charged with a specific trust. The nature and extent of the trust is not disclosed by the record. However, the complainant regarded the fund as a trust fund in her hands for the use and benefit of her minor son, and to be used by her for the education and support of her minor son. If this money was loaned to the defendant by the complainant and the defendant executed his notes for the $5,000 and $1,000 respectively, it would have been a proper investment of the fund by the complainant. If the defendant received the benefit from these loans, or received the money, and it was used by him, $5,000 as the cash payment on a house and lot, the title to which was taken to the defendant and his wife; and the $1,000 used by him in his business, we do not think he is in a position to complain. There was no notice or knowledge to the defendant with reference to the nature and limitations of the trust, if any, nor was there any notice or knowledge of

the defendant that the complainant was not authorized to loan this money in her own name.

"Thus he may sue at law respecting the trust estate or defend a suit brought against him if the instrument by which the trust is created does not inhibit. The cestui que trust, though the absolute owner in equity, is regarded in a court of law in the light of a stranger." 26 R. C. L., 1341.

"The trustees of an expressed trust have the legal title to and are the legal owners of, personal property belonging to the trust estate, and, in an action by such trustees against a stranger, alleged to have in his possession are to be liable to account for property belonging to the trust estate to reduce such property to possession or to subject it to their control of for an accounting, unless the action involves and required determination of rights as between the beneficiaries themselves, or as between them and the trustees, it is not necessary to make them parties, "and in the absence of fraud or collusion they are bound by the decrees." 26 R. C. L., p. 1134; Kellogg King, 55 A. S. R., 74.

However, the evidence of the complainant is to the effect that she has already repaid to her minor child the full amount received by her from his grandfather, in the education and support of child. This evidence is not controverted. The defendant can now be heard to complain. If he received this money from complainant and gave to her a note payable to her as an vidual, and not as trustee for her minor child, he cannot be hea deny his liability on the notes.

Defendant in his assignments of error five and six complains at the action of the court in submitting issues of fact Nos. 1 and 3. We think all the issues of fact were proper issues under the pleadings and the evidence to be submitted to the jury. The first issue submitted to the jury. "Does the note for $5,000 represent a loan to the defendant?" The third issue submitted "Was there an agreement between the complainant and the defendant that she, Mrs. Rylee, would look to the house and lot alone for security for this note, and that she would not look to the defendant personally for payment." These two quoted issues were the mainly contested issues involved in the litigation. The answer of defendant states as follows: "Defendant avers that complainant knew all the facts and circumstances surrounding the purchase of said property; she knew then and knows now that not one cent of the said $5,000 so advanced by her was used by this defendant, and that every cent of said $5,000 was used in the purchase of the property." He avers that "she knows now and knew when the said money was advanced that she was to look to said property for the repayment of said money and not to this defendant, all of which was well understood

by and between complainant and this defendant at the time of said advancement by her." This issue, Number 3, is clearly responsive to the allegation in the answer on the subject as well as to the evidence of the defendant. The other assignments of error proper to be considered go to the action of the court in refusing to give certain special requests of defendant in charge to the jury. These special requests in so far as they were proper were covered by the general charge.

The theory of the defendant was summarized by the court, and its essence stated to the jury. The court is not required in charging the jury to enter into a detailed statement of all the evidence, pro and con. The court is required to state with as much clarity as the record will permit the respective theories of the parties. We think that the Chancellor clearly conveyed to the jury the defendant's theory upon which he predicated his contention that he was not liable. The defendant, both in his answer and in his testimony, stated that while he received three checks from complainant, aggregating $5,000, and deposited the same to his own credit in the bank, and then issued his checks to the seller of the property aggregating $5,000 for the cash payment in the purchase of the property, that he did not, in fact solicit a loan from complainant of this money. He admits signing the note for $5,000 but states that it was merely a memorandum of the amount received by him from the complainant, and not intended to be treated as a note upon which he would become liable to complainant. We think that this theory was presented to the jury in the general charge by the court.

The issues of fact submitted to the jury also become a part of the general charge of the court to the jury, and specific reference was made to each of the issues of fact in the charge. The charge of the court and the issues of fact clearly presented the defendant's theory. We think the special requests were properly refused by the court.

There was material evidence to support the finding of the jury on each of the issues submitted. The findings of the jury on each of the issues were concurred in by the Chancellor. We find no error in the action of the court in overruling defendant's motion for a new trial. All assignments of error are overruled and the decree of the Chancellor is affirmed, with costs.

Heiskell and Owen, JJ., concur.